**The PEOPLE of the State of Colorado, Complainant,**

v.

**Peggy E. STEVENS, Attorney–Respondent.**

**No. 94SA315.**

Supreme Court of Colorado, En Banc.

Oct. 24, 1994.

Linda Donnelly, Disciplinary Counsel, Kenneth B. Pennywell, Asst. Disciplinary Counsel, Denver, for complainant.

Peggy E. Stevens, pro se.

PER CURIAM.

The respondent, Peggy E. Stevens,[1] and the assistant disciplinary counsel entered into a stipulation, agreement, and conditional admission of misconduct containing a recommendation that a public censure be imposed upon the respondent. *See* C.R.C.P. 241.18. An inquiry panel of the Supreme Court Grievance Committee approved the stipulation and recommendation. We accept the stipulation and adopt the inquiry panel's recommendation.

I

The parties stipulated to the following facts and conclusions. In 1973, three persons, including John Allen Vann and a lawyer other than the respondent (hereafter the STAPO partner lawyer), formed a partnership denoted the STAPO Company (STAPO). STAPO, as general partner, subsequently created the Mid Continent Management Group (MMG), a limited partnership. Vann and the STAPO partner lawyer were at various times limited partners of MMG.

In 1987, Vann attempted to convey his partnership interests in STAPO and MMG to his children. The STAPO partnership agreement did not authorize transfers of partnership interests, and the MMG partnership agreement required any changes in partnership interests to be registered on the MMG certificate of limited partnership. Although the STAPO partner lawyer, in his capacity as a general partner, agreed to file an amended MMG partnership certificate to reflect the transfer, he did not do so.

In September 1988, Vann, represented by another lawyer other than the respondent, commenced Chapter 7 federal bankruptcy proceedings. The day before the bankruptcy petition was filed Vann's wife filed a petition for legal separation; however, the Vanns reconciled in early 1989.

The bankruptcy proceedings were vigorously contested, and a number of adversary proceedings were filed challenging the dischargeability of certain debts or seeking to prevent the debtor's discharge in bankruptcy. These complaints alleged fraud, concealment, fraudulent conveyances, and failure to keep adequate books and records. In one of those adversary proceedings Vann's wife and children were named parties and Vann's 1987 efforts to transfer his interests in STAPO and MMG to his children were challenged.

In June and July 1989, the STAPO partner lawyer entered appearances on behalf of Vann in two of the adversary proceedings connected with the bankruptcy matter. In December 1989, the STAPO partner lawyer also entered an appearance on behalf of Vann's wife in the bankruptcy proceedings to protect her interest in personal property belonging to Vann.

In March 1989, the STAPO partner lawyer entered into an independent contractor agreement with the respondent. The agreement provided that the respondent would bill the STAPO partner lawyer for all work the respondent performed at the lawyer's request at the respondent's customary rate of $100 per hour, and that the STAPO partner lawyer would pay the respondent at a rate of $80 per hour. The respondent stipulated that in financial terms her relationship to the STAPO partner lawyer was analogous to that of partner and associate. The respondent and the assistant disciplinary counsel refer to the STAPO partner lawyer as the respondent's "employer" in the stipulation.

1. The respondent was admitted to the bar of this court on October 26, 1981; is registered as an attorney upon this court's official records; and is subject to the jurisdiction of this court and its grievance committee in these proceedings. C.R.C.P. 241.1(b).

Beginning in April 1989, the respondent completed several research projects for the STAPO partner lawyer involving the Vann bankruptcy case. The respondent issued opinion letters under her firm letterhead in late 1989 and early 1990, addressed to Vann in care of the STAPO partner lawyer, concerning issues relating to Vann's ability to use certain contributions to his compensation plan. Out of the funds he ultimately withdrew from the compensation plan, Vann paid the STAPO partner lawyer $39,000. The respondent received approximately $3,000 from these funds and had a personal interest in assuring that Vann received the funds and paid them to the STAPO partner lawyer. The respondent has admitted that her conduct violated DR 5–101(A) (a lawyer shall not accept employment if the exercise of the lawyer's professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests).

In January 1990, the respondent began to communicate directly with and advise Vann about his bankruptcy proceedings while simultaneously discussing with and advising STAPO of its ability to disentangle itself from the effects of those proceedings. The respondent knew or should have known that Vann, STAPO, and MMG had either actual or potentially conflicting interests. Nevertheless, the respondent undertook multiple representation when it was not obvious that she could adequately represent Vann and the two partnerships. In addition, because the STAPO partner lawyer was also a partner in STAPO and MMG, the respondent had conflicting interests in not offending that lawyer, whom she deemed her "employer" in the stipulation, while at the same time zealously representing the interests of STAPO and MMG. As the respondent has admitted, her conduct violated DR 5–101(A); DR 5–105(A) (a lawyer shall decline proffered employment if the exercise of the lawyer's independent professional judgment on behalf of a client will be or is likely to be affected by the acceptance of the proffered employment, or which would be likely to involve the lawyer in representing differing interests, unless it is obvious the lawyer can represent the interests of each client, and both clients consent after full disclosure); and DR 5–105(B) (a lawyer shall not continue multiple employment if the exercise of the lawyer's independent professional judgment on behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing different interests).

In March 1990, the respondent entered her appearance, on behalf of Vann's wife and children in the adversary proceeding involving the validity of Vann's purported transfers of his STAPO and MMG interests to his children. The STAPO partner lawyer, described in the stipulation as the respondent's "employer," was listed as a witness in that proceeding. At the time the respondent entered her appearance, Vann and his wife had actual or potentially conflicting interests in the bankruptcy proceeding. While it would have been advantageous to Vann's wife to maximize Vann's assets, Vann was attempting to insulate certain assets from the bankruptcy proceedings. In addition, the interests of Vann's wife and of his children were in direct conflict. The children would have benefitted if Vann's partnership interests were excluded from the bankruptcy, but such exclusion would have adversely affected Vann's wife. The respondent has acknowledged that she again engaged in multiple representation when it was not obvious that she could adequately represent the children, Vann's wife, and her own personal interests, contrary to DR 5–101(A), DR 5–105(A), and DR 5–105(B).

II

The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*), provides that, in the absence of aggravating or mitigating factors, "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." *ABA Standards* 4.32. On the other hand, public censure is warranted if the lawyer is at most "negligent in determining whether the representation of a client may be materially affect-

ed by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client." *Id.* at 4.33. *See People v. Chew*, 830 P.2d 488, 489–90 (Colo.1992); *People v. Odom*, 829 P.2d 855, 857 (Colo.1992).

The assistant disciplinary counsel indicates that the respondent "became enmeshed in the Vann Bankruptcy at the behest of the much more experienced bankruptcy attorney.... Respondent, to her detriment, relied upon [the STAPO partner lawyer] not to steer her into such a precarious situation." In fact, the bankruptcy court rejected *sua sponte* the STAPO partner lawyer's statement of compensation and ordered him to disgorge the fees of approximately $124,000 he received in the Vann bankruptcy, including approximately $11,000 paid to the respondent. The parties have stipulated that no actual harm resulted to the clients in the bankruptcy proceedings.

According to the assistant disciplinary counsel, the only aggravating factor is the existence of a pattern of misconduct. ABA *Standards* 9.22(c). In mitigation, we note that the respondent has not been previously disciplined in thirteen years of practice. *Id.* at 9.32(a) (the absence of a prior disciplinary record is a mitigating factor). The respondent has also cooperated in these proceedings, *id.* at 9.32(e), and has demonstrated remorse, *id.* at 9.32(*l*). Taking these factors into account, we accept the stipulation, agreement, and conditional admission of misconduct, and the inquiry panel's recommendation of a public censure. *See Odom*, 829 P.2d at 857–58 (negligent violation of conflict of interest disciplinary rules warrants public censure in presence of mitigating factors).

### III

It is hereby ordered that the respondent, Peggy E. Stevens, be publicly censured. It is further ordered that the respondent shall pay the costs of this proceeding, in the amount of $47.75, within thirty days after the announcement of this opinion, to the Supreme Court Grievance Committee, 600—

17th Street, Suite 920–S, Denver, Colorado 80202–2135.